Mermelstein v Waspit Group, Inc. (2025 NY Slip Op 50026(U))

[*1]

Mermelstein v Waspit Group, Inc.

2025 NY Slip Op 50026(U)

Decided on January 15, 2025

Supreme Court, New York County

Reed, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 15, 2025
Supreme Court, New York County

Fred Mermelstein, PETER S. O'NEILL, STEVEN MAGID, MARY DOWNE, ADAM ZION, HILARY HAYES, HUGH DOWNE, EVAN ROBERTSON, WALTER WILLIAM CLARK as trustee for GOLD FINCH ENTERPRISES, INC. DBP, and RONNIE ELDRIDGE as trustee for THE BRESLIN PROFIT SHARING PLAN, Plaintiffs,

against
Waspit Group, Inc., RICHARD STEGGALL, URBAN FT. INC., URBAN FT (NORTH AMERICA), LLC, URBAN FT (US) LLC, URBAN FT GROUP, INC., and URBAN FT ADVISORY LLC, Defendants.

Index No. 652500/2019

Robert R. Reed, J.

The following e-filed documents, listed by NYSCEF document number (Motion 002) 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 92, 93 were read on this motion for JUDGMENT - SUMMARY.
This action arises from a series of promissory notes issued by defendant Waspit Group, Inc. (Waspit) to plaintiffs and guaranteed by defendant Richard Steggall. The action in its present form is the result of the consolidation of an action plaintiffs commenced on April 29, 2019 as against Waspit and Steggall (the Waspit action) and an action the same plaintiffs commenced on May 22, 2019 as against Urban FT, Inc. (UFT Inc.), Urban FT (North America), LLC (UFT NA), Urban FT (US) LLC (UFT US), Urban FT Group, Inc. (UFT Group), and Urban FT Advisory LLC (UFT Advisory) (the UFT action).
In motion sequence number 002, plaintiffs seek summary judgment as against the answering defendants in the UFT action, UFT Inc., UFT NA, and UFT Group (UFT defendants), on the first, second, third, and fourth causes of action in their complaint originally filed in the UFT action, and to dismiss all of the UFT defendants' counterclaims in their answer in the UFT action. The UFT defendants oppose the motion to the extent plaintiffs seek summary judgment on the first, second, third, and fourth causes of action. For the following reasons, the motion is granted in part.
I. BACKGROUND
Between August 2, 2012 to October 14, 2015, Waspit executed and delivered to plaintiffs ten promissory notes agreeing to repay loans from plaintiffs (see NYSCEF doc Nos. 8-17). The promissory notes had maturity dates between April 30, 2013 and January 4, 2016 (id.).
At the time each promissory note was issued, defendant Steggall, Waspit's CEO, also [*2]executed personal guaranties to plaintiffs, guaranteeing full payment of the notes and the performance of all of the obligations thereunder (id.).
However, neither Waspit nor Steggall has repaid the principal and remaining interest due pursuant to the notes and the guaranties to date (id.).
In April 2015, Waspit loaned $1 million to defendant UFT Inc., then known as Wipit, Inc., a financial technology business, in exchange for a promissory note (Steggall affidavit ¶ 6, exhibit 2).
Later, Waspit acquired the company and changed its name to Urban FT, Inc.
In December 2015, Waspit loaned an additional $1.5 million to UFT Inc., and the parties amended the April 2015 promissory note to reflect the additional amount (Steggall affidavit ¶ 6; see id. exhibit 3). The UFT defendants admit in their answer that, "[i]n 2015, Waspit acquired control of [UFT Inc.] in consideration for substantially all of the assets of Waspit" (affirmation of plaintiffs' counsel, exhibit D [answer] ¶ 99). The UFT defendants claim that Waspit also received 68% of the issued and outstanding shares of UFT Inc. in the transaction, and that the promissory note was secured with a UCC-1 financing statement (Steggall affidavit ¶ 6).
Defendants admit that, by October 2017, UFT Inc.'s business had floundered, and that its stock is of no value (Steggall affidavit ¶ 13).
In total, on April 29, 2019, when the Waspit action was commenced, plaintiffs claimed Waspit owed them $1,567,165.28, including principal and interest.

II. PROCEDURAL HISTORY
Plaintiffs commenced the Waspit action, captioned Mermelstein et al. v Waspit Group, Inc., et al., Sup Ct, NY County, index No. 652500/2019, on April 29, 2019, by a motion for summary judgment in lieu of complaint as against Waspit and Steggall based on the promissory notes and guaranties (mot seq no. 001).
On May 22, 2019, the same plaintiffs commenced a parallel action, Hugh Downe et al. v Urban FT, Inc. et al., Sup Ct, NY County, index No. 653066/2019, via summons and complaint, asserting six causes of action as against UFT Inc., UFT NA, UFT US, UFT Group, and UFT Advisory for (1) fraudulent conveyance under former section 273 of the Debtor and Creditor Law (DCL); (2) fraudulent conveyance under former section 274 of the DCL; (3) fraudulent conveyance under former section 276 of the DCL; (4) attorneys' fees pursuant to former section 276-a of the DCL; (5) successor liability and/or de facto merger; and (6) to pierce the corporate veil.
The UFT defendants answered on July 30, 2019 with five affirmative defenses and five counterclaims for (1) breach of fiduciary duty as against Mermelstein and H. Downe; (2) improper disclosure of confidential information as against Mermelstein and H. Downe; (3) fraudulent misrepresentation as against H. Downe and M. Downe; (4) false and fraudulent statements as against Zion and defamation as against Zion; and (5) contractual interference as against Zion. UFT US and UFT Advisory did not answer. Plaintiffs filed a reply to the counterclaims on August 16, 2019.
On September 26, 2020, plaintiffs moved in the UFT action to consolidate that action with the Waspit action. On October 23, 2020, the court granted the motion by an Order of Transfer and Consolidation and ordered that the pleadings in the actions consolidated shall stand as the pleadings in the consolidated action.
On December 10, 2020, the court, by Justice Edmead, granted plaintiffs' motion for summary judgment in lieu of complaint in part, granting judgment for most of the plaintiffs but [*3]denying judgment with respect to the notes and corresponding guaranties held by H. Downe on his $53,000 note and by Hayes and O'Neill, and to the guaranties held by Fred Mermelstein. The court converted the proceedings to a plenary action with respect to those notes and/or guaranties and deemed plaintiffs' motion papers to be the complaint in the plenary action.
Plaintiffs filed the instant motion (Mot seq No. 002) on July 12, 2021, seeking summary judgment pursuant to CPLR 3212 and dismissal of all of the UFT defendants' counterclaims pursuant to CPLR 3211 (a) (7). The UFT defendants oppose the motion.

III. DISCUSSION
It is well established that "the proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact. Once the movant makes the proper showing, the burden shifts to the party opposing the motion for summary judgment to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action" (Stonehill Capital Mgt. LLC v Bank of the W., 28 NY3d 439, 448 [2016], citing Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]).
In support of the motion, plaintiffs submit, as relevant, an affirmation of defendant Zion; an article from the PR Newswire describing UFT Inc.'s acquisition of UFT Inc. on September 3, 2015 in a reverse merger; UFT Inc.'s promissory note to Waspit and its amendment; an email from Stegall to the Waspit shareholders describing Stegall's understanding that a large majority of the shareholders wished to convert their positions to UFT Inc. without the need for a unanimous agreement; a letter from Stegall in which he explains that Stegall is the CEO of Waspit and a co-founder of UFT Inc., Kasey Kaplan is the COO of Waspit, and Mark Kilpatrick is the Chief Product & Brand Officer of Waspit; a Written Consent in Lieu of a Meeting of the Board of Directors of UFT Inc. approving the election of Steggall as the CEO and President of UFT Inc.; a printout of Kaplan's profile page on LinkedIn.com in which he identifies himself as the co-founder and Executive Director of UFT Inc.; a printout of an article from YEC describing him as the co-founder and Chief Product Officer of UFT Inc.; and a copy of the Third Amended and Restated Certificate of Incorporation of UFT Inc. filed on November 17, 2015 signed by Steggall as the Chief Executive Officer of UFT Inc.
Summary Judgment on First Cause of Action
In plaintiffs' first cause of action against the UFT defendants, plaintiffs assert that the conveyance of funds by Waspit to UFT Inc. was fraudulent as to plaintiffs within the meaning of section 273 of the DCL and should be voided because they rendered Waspit insolvent and were made without fair consideration.
Former section 278 of the DCL, effective at the time of the commencement of the UFT action, provides that, "[w]here a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person . . . have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim."
Former section 273 of the DCL provides that "[e]very conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment." "Fraudulent conveyance must be proven by clear and convincing evidence" (Symbax, Inc. v Bingaman, 219 AD2d 552, 553 [1st Dept 1995]).
Here, plaintiffs fail to establish a prima facie case, as they fail to establish that the conveyance has left Waspit insolvent. Plaintiffs only point to defendants' admission that Waspit loaned substantially all of its assets to UFT Inc. (see answer ¶ 99) and Zion's affirmation that "Waspit was left with virtually no capital after the conveyances, and, as a result, Waspit was unable to meet its obligations under the terms of the Notes" (Zion affirmation ¶ 7).
However, even if Waspit loaned substantially all of its assets to UFT Inc., this does not, in itself, necessarily lead to the conclusion that it was rendered insolvent. Likewise, although the court need not accept as true Zion's conclusory assertion regarding Waspit's working capital where it is not supported by any additional evidence, even if it did, a lack of capital does not necessarily compel the conclusion that Waspit was rendered insolvent. Indeed, in return for the $2.5 million loan, Waspit received a promissory note providing for repayment of the same with 8% interest, a 68% share in UFT Inc., which constitute assets. Plaintiffs fail to make a prima facie case. Summary judgment is therefore denied as to the first cause of action.
Summary Judgment on Second Cause of Action
In their second cause of action against the UFT defendants, plaintiffs assert that the Waspit's conveyance of funds was made without fair consideration and is therefore void under former section 274 of the Debtor and Creditor Law.
Under former section 274 of the DCL, "[e]very conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction without regard to his actual intent."
As with their first DCL claim, plaintiffs have offered no evidence to show that Waspit's loan left it with unreasonably small capital for its business. Even if it was left with no other assets than the promissory note from UFT Inc. and shares in UFT Inc., plaintiffs have not submitted evidence regarding the business that Waspit was engaged in or was about to engage in at the time of the conveyances. Indeed, without such evidence, it is entirely possible that Waspit's assets, even if insignificant, were sufficient for its business purposes. As an illustration, according to the Steggall affidavit, even before the loan, "Waspit, itself, was merely a holding company, which did not substantially conduct business, on its own, other than owning [UFT US] and had little operating capital" (Steggall aff ¶ 4). Low working capital is entirely consistent with the operations of a holding company (see, e.g., Pensmore Invs., LLC. v Gruppo, Levey & Co., 143 AD3d 588, 588 [1st Dept 2016]).
Further, while plaintiffs allude to Waspit's inability to repay its debts to plaintiffs, obligations to third parties are not contemplated within the statute, which is instead concerned with the business engaged in by the transferor.
Summary judgment is therefore denied as to the second cause of action.
Summary Judgment on Third Cause of Action
In the third cause of action, plaintiffs assert that Waspit's loan was conveyed with actual intent to hinder, delay or completely avoid enforcement of the subject promissory notes and is [*4]therefore void pursuant to former section 276 of the DCL.
Former section 276 of the DCL states that "[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." "[F]raudulent intent, by its very nature, is rarely susceptible to direct proof and must be established by inference from the circumstances surrounding the allegedly fraudulent act" (Matter of Setters v AI Props. & Devs. (USA) Corp., 139 AD3d 492, 493 [1st Dept 2016]). These badges of fraud may "include (1) the close relationship among the parties to the transaction, (2) the inadequacy of consideration, (3) the transferor's knowledge of the creditor's claims, or claims so likely to arise as to be certain, and the transferor's inability to pay them, and (4) the retention of control of property by the transferor after the conveyance" (Pen Pak Corp. v LaSalle Natl. Bank, 240 AD2d 384, 386 [2d Dept 1997]).
Plaintiffs argue that they have demonstrated
"(1) the close relationship between the officers of Waspit and the officers of Answering [UFT] Defendants, (2) the inadequacy or absence of consideration, (3) Waspit's knowledge of its debt to the Plaintiffs and its inability to pay it, (4) the fact that the transferred funds in the total amount of $2,500,000 was the only asset that Waspit owned sufficient to pay its obligation to the Plaintiffs, (5) the representation by the same attorneys of Waspit and the [UFT] Defendants, and (6) the timing of the [UFT Inc.] Acquisition and the conveyance of funds from Waspit after the Notes had for the most part matured and become due and owing to the Plaintiffs" (plaintiffs' brief in support of mot at 19).
However, in this court's view, plaintiffs have failed to prove by clear and convincing evidence actual fraudulent intent on the part of Waspit (Symbax, Inc.). While the evidence shows a close relationship between the officers of Waspit and UFT Inc., and that Waspit made the loans to UFT Inc. after it was already in default on its promissory notes to plaintiffs, they do not demonstrate any inadequacy of the consideration or that the transferred funds of $2.5 million were the only asset Waspit owned sufficient to pay its obligations to plaintiffs. Representation by the same attorneys of Waspit and UFT Inc. is irrelevant to this inquiry.
Therefore, plaintiffs have failed to establish a prima facie case, and summary judgment is denied with respect to the third cause of action.
Summary Judgment on Fourth Cause of Action
In the fourth cause of action, plaintiffs assert that they are entitled to reasonable attorneys' fees incurred in this action pursuant to former section 276-a of the Debtor and Creditor Law. Because attorneys' fees under former section 276-a hinges on the same "actual intent" that animates former section 276, summary judgment must be denied as to this claim as well.
Summary Judgment to Dismiss Counterclaims
Finally, plaintiffs seek to dismiss each of the counterclaims of the UFT defendants pursuant to CPLR 3211 (a) (7).
On a motion to dismiss under CPLR 3211 (a) (7), the court accepts the facts as alleged in [*5]the pleadings as true, accords the claimant the benefit of any possible favorable inference, and determines only whether the facts as alleged fit within any cognizable legal theory (see Leon v Martinez, 84 NY2d 83 [1994]).
In the UFT defendants' first counterclaim, they assert that plaintiffs Mermelstein and H. Downe, as members of the board of directors of Waspit, breached their fiduciary duty to Waspit by utilizing information they received in their roles as board directors of Waspit to bring this legal proceeding.
In the second counterclaim, the UFT defendants assert that plaintiffs Mermelstein and H. Downe improperly disclosed to plaintiffs confidential information they learned in their roles as board directors of Waspit.
In the third counterclaim purportedly for fraudulent misrepresentation, the UFT defendants assert that Edward Downe, who is not a party to this action and is the father of Hugh and Mary Downe, "made representations to investors, including, but not limited to, the Plaintiffs, which Waspit did not authorize and was not aware of" (answer ¶ 114). There is no allegation that these representations were false.
In the fourth counterclaim, the UFT defendants assert that plaintiff Zion made false and fraudulent defamatory statements with respect to Waspit and Steggall to numerous individuals including, but not limited to, plaintiffs, causing plaintiffs not to extend or convert their loans and causing plaintiffs to bring this action. The UFT defendants also claim that Zion knowingly deceived the other plaintiffs to "have his promissory notes paid by making statements which would induce the Plaintiffs to join this proceeding" (answer ¶ 118).
In the fifth counterclaim, the UFT defendants assert that Zion made false and misleading defamatory statements to numerous individuals including, but not limited to, plaintiffs, contractually interfering with Waspit's agreements and relationships with plaintiffs.
As plaintiffs point out, all of these claims claim damages incurred by Waspit, not by the UFT defendants. The UFT defendants have no standing to assert claims on behalf of the Waspit defendants. Indeed, the UFT defendants do not oppose the motion to the extent it seeks dismissal of their counterclaims. The counterclaims are therefore altogether dismissed.
Accordingly, it is hereby
ORDERED that plaintiffs' motion for summary judgment is granted in part, to the limited extent that the UFT defendants' counterclaims are all dismissed; and it is further
ORDERED that the motion is, in all other respects, denied.
DATE January 15, 2025
ROBERT R. REED, J.S.C.